UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES,

-against-

VINCENT VERTUCCIO, PRAFUL PANDYA,
AND JOHN SERVIDER,

Defendants.
-----------------------------------------------------------x

MEMORANDUM OPINION

15-cr-174 (ENV)

VITALIANO, D.J.

Vincent Vertuccio and John Servider were charged by indictment with a number of crimes, including conspiracy to obstruct a grand jury investigation relating to the other charged offenses. ECF Dkt. No. 1. Due to unforeseen, unforeseeable, and unfortunate developments, amidst preparation for trial and following preliminary motion practice,[1] Servider sought representation by Attorney James Froccaro, who represents Vertuccio.

The relevant circumstances arose after Vertuccio had eschewed trial, which had happened months before, when he entered into a plea agreement with the government. His guilty plea was allocuted by the Court on April 12, 2017. *See* ECF Dkt. No. 116, Minute Entry for Apr. 12, 2017 Plea. Upon learning of Servider's new counsel plan, the government moved to disqualify Attorney Froccaro as Servider's trial counsel. On November 8, 2017, the Court granted the government's motion after a hearing for reasons then stated on the record. *See* Minute Entry for Nov. 8, 2017. Given the delicate balancing required to justify denial of a defendant's right to be

---

[1] A broader discussion of the background facts and litigation history of this case are set forth in *United States v. Vertuccio*, March 17, 2017 Memorandum and Order, ECF No. 111, which is the order resolving various pretrial motions. Familiarity of the parties with that order and the facts it describes is presumed.

1

represented by his chosen counsel, the Court indicated that it would issue a memorandum opinion to offer an expanded discussion of the highly unusual circumstances and corresponding reasons for the Court's decision to disqualify Attorney Froccaro from representing Servider as his trial counsel.

Background

From indictment, Servider was represented by Michael Rosen until Attorney Rosen's most untimely death in July of this year. Michael Rosen was a lion of the Bar of this Court. His work is that of legend. His knowledge, his skill, his integrity, and his simple human decency are of cherished memory. Servider lost a talented and highly experienced lawyer; the Eastern District lost a mensch and one of its wonderful *amici*.

At the time of Attorney Rosen's death, as noted earlier, Vertuccio had already pleaded guilty and was awaiting a sentencing date. Servider was on course for trial, including on a conspiracy count to which Vertuccio had already pled guilty. Since it was clear that, though an attorney, Servider had no intention of representing himself, time was needed for Servider to find a replacement for Attorney Rosen. Servider was granted until September 6, 2017, to obtain new counsel. ECF Dkt. No. 125. But, when that date came and went without Servider succeeding in his quest, he was granted until October 13, 2017 to secure replacement counsel. *See* Minute Entry for Sept. 6, 2017. When Servider appeared on October 13, in a stunning move, he sought to retain Attorney Froccaro.

In response to Servider's announcement, a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), was scheduled for November 8, 2017. The Court instructed both Vertuccio and Servider to consult independent counsel about the potential conflicts that this proposed representation might present. *See* Minute Entry for Oct. 13, 2017. Subsequently, the

Government filed a letter motion to disqualify Attorney Froccaro as counsel for Servider. ECF Dkt. No. 133. Attorney Froccaro filed papers opposing the government's motion and cross-moved for permission to represent Servider, which the Court understood to be on behalf of both Servider and Vertuccio. ECF Dkt. No. 134.

At the hearing on November 8, Servider and Vertuccio appeared with Attorney Froccaro, along with separate *Curcio* counsel for each defendant who had independently consulted with and advised their respective *Curcio* clients. The Court did not then conduct a formal *Curcio* allocution since it had not yet determined whether any actual or potential conflict was waivable in this instance. Each *Curcio* counsel, however, did represent that he had fully discussed the pitfalls of joint representation with his respective client and that each client desired to waive any conflict. Servider and Vertuccio then confirmed the representations that their *Curcio* counsel had made to the Court. Argument was then had on the government's motion to disqualify Attorney Froccaro. For reasons announced from the bench, the Court granted the government's motion, and advised the parties that this Memorandum Opinion would follow to provide greater depth and analysis for its decision. *See* Minute Entry for Nov. 8, 2017.

Relevant Principles of Law

Under the Sixth Amendment, a defendant in a criminal case is entitled to the assistance of competent counsel, *see Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), and there is a "presumption in favor of [representation by a defendant's] counsel of choice." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004). Nevertheless, notwithstanding the right to choose one's own lawyer and that the right is a precept basic to the Sixth Amendment, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be

represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159, 108 S. Ct. at 1697. Additionally, federal courts have an independent interest "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160, 1698. Conflict between these competing precepts and objectives can arise, as here, when a defendant seeks to be represented by an attorney who suffers from an actual or a potential conflict of interest, namely, when a defendant seeks to be represented by an attorney who "[is] represent[ing one of the] other defendants charged in the same criminal conspiracy." *Id.* at 159, 1697; *see also United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994).

When a court is made aware that there is even the possibility of an attorney's conflict of interest, it must follow the two-step analytical framework described in *Levy*. *Levy*, 25 F.3d at 153. First, there is an obligation to inquire and "investigate the fact and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, potential conflict, or no genuine conflict at all." *Id.* An actual conflict "exists when the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones*, 381 F.3d at 119 (citation omitted). A potential conflict exists if the defendant's interests "*could* place the attorney under inconsistent duties in the future." *Id.* (emphasis in original).

If the court determines that there is an actual or potential conflict, it moves to the second step, which requires consideration of whether the conflict is automatically disqualifying or waivable. *Levy*, 25 F.3d at 153. The Second Circuit has clarified that there is a "very narrow category of cases in which we have held attorney conflicts to be unwaivable." *United States v.*

4

*Perez*, 325 F.3d 115, 126 (2d Cir. 2003). Indeed, the Circuit has warned trial courts to avoid assuming "too paternalistic an attitude in protecting the defendant from himself." *Id.* (quoting *United States v. Curcio*, 694 F.2d 14, 25 (2d Cir. 1982)). More concretely, this line of authority suggests that there are only two instances where attorney conflicts are not waivable: (1) when the subject attorney faces or potentially faces criminal liability arising out of the same criminal conduct as the defendant seeking his services, and (2) when the subject attorney's financial interests diverge from those of the defendant. *Perez*, 325 F.3d at 126.

But, beyond the "always" category, there is also a "sometimes" category. Lesser conflicts, including, for example, joint representation, are generally waivable, subject to a knowing and intelligent waiver. *Id.* at 127. In fact, *Perez* quite emphatically instructs that "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right to take precedence must generally be left to the defendant and not be dictated by the government." *Id.* at 125. Still, this maxim of Sixth Amendment application falls into the "sometimes" category. As the Supreme Court made clear in *Wheat*, district courts must be afforded substantial latitude to refuse "waivers of conflicts of interests not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163, 108 S. Ct. at 1699; *see also United States v. Cain*, 671 F.3d 271, 294 (2d Cir. 2012) (reiterating after *Perez* that district courts retain "broad latitude" when considering whether to disqualify chosen counsel).

Another integer in the conflict calculus, moreover, is the trial court's independent responsibility "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at

5

160, 108 S. Ct. at 1698. Trial courts, consequently, retain at least some discretion to disqualify counsel even where the law does not absolutely require it – discretion to entertain those situations that fall into the "sometimes" category.

## Discussion

There can be, and is, no question that Servider is constitutionally entitled to seek out counsel of his choosing, and chose representation by Attorney Froccaro. Three of the parties have skin in the conflict game: Servider, Vertuccio, and the government. All agree that Servider has a right under the Sixth Amendment to be represented by counsel of his choice. All agree that joint representation of Servider and Vertuccio by Attorney Froccaro does not present an actual conflict at this time. All agree that joint representation of two co-defendants named in the same count of an indictment by a single attorney can blossom into an actual conflict, and that such representation, at minimum, presents a potential conflict requiring court attention. *See Cain*, 671 F.3d at 294 (quoting *Wheat*, 486 U.S. at 163, 108 S. Ct. at 1699). But, even the government, though somewhat begrudgingly, acknowledges that, in more or less ordinary circumstances, the potential conflicts presented by the joint representation of criminal co-defendants can be waivable. *See Curcio*, 680 F.2d at 886; *see also* Defendant's Brief at ECF Dkt. No. 134 at 4-6.

Attorney Froccaro came to the hearing loaded for bear; fully prepared to allocute *Curcio* waivers from both Servider and Vertuccio. Separate and independent *Curcio* counsel had privately met with their respective *Curcio* clients prior to appearance. Each defendant indicated that they understood their risks each might confront as a result of Attorney Froccaro's joint representation of them. Preliminarily, and before any *Curcio* allocution in open court, they indicated that they knowingly and voluntarily were prepared to accept those risks and waive any potential conflict or right to undivided loyalty resulting from the joint representation. All that

6

was necessary for a successful *Curcio* waiver in ordinary circumstances was in place. What was missing were the ordinary circumstances.

To start, at all times relevant to the criminal conspiracy for which both defendants stood charged, Servider represented Vertuccio as an attorney – they were lawyer and client. The un-level playing field does not end there. Servider and Vertuccio are before the Court in remarkably different postures. Ably represented by Attorney Froccaro, Vertuccio has already pled guilty to a charge of conspiracy to obstruct a grand jury investigation. *See* ECF Dkt. No. 116, *supra* at 2. Servider plans to go to trial proclaiming his innocence of being Vertuccio's co-conspirator. At the end of the road, Vertuccio will be sentenced for his crime. If convicted, so will Servider. In between, though, Attorney Froccaro will be gathering facts and confidences from both defendants that, based on his tactical decisions, whether Attorney Froccaro elects to use or refrain from using certain information, can come back to haunt either or both of his clients. Attorney Froccaro finds himself in this crucible not merely because he represents codefendants named in the same conspiracy but because he represents one defendant who acknowledges the existence of the conspiracy and his guilty involvement in it and the other who effectively denies that there was a conspiracy at all. It is a matter of joint representation, but hardly one of joint defense. These extraordinary circumstances differ from the cases cited by Attorney Froccaro, where potential conflicts were found waivable in the more ordinary circumstances those cases presented.

The road from here through trial, and beyond, where, at least Vertuccio will be sentenced, is fraught with peril. In prosecutions charging joint conduct, whether at trial or at sentencing, the shifting of blame and assessing culpability based on comparative roles is of utmost significance. For example, even if Servider were to be acquitted, Attorney Froccaro would not be able to use

7

confidences gleaned from Servider that minimized Vertuccio's role at a *Fatico* hearing. On the flip side, the government's proof of conspiracy will most assuredly feature Vertuccio's role in it. It is not likely that Attorney Froccaro will be able to eliminate or, should there be a conviction, create a record that minimizes Servider's role without doing so at Vertuccio's expense.

Perhaps more practically, how does he cross-examine government witnesses and comply with his ethical obligation not to use confidences he may have gained from his representation of Vertuccio? *See United States v. James*, 708 F.2d 40, 45-46 (2d Cir. 1983). With the ethical obligation to protect the confidences of and give undivided loyalty to each client, how does Attorney Froccaro's argument to Servider's jury in the teeth of evidence showing Vertuccio's guilt not seek to shift blame to Vertuccio and away from Servider? Does he make the opposite argument at Vertuccio's sentencing shifting the blame to Servider? Should Servider be convicted, he is certainly not free to minimize Servider's role, even if it were true, by suggesting that his conduct was the product of economic duress stemming from Servider's financial need to follow Vertuccio's orders to continue as his counsel. Or, at Vertuccio's sentencing, even if it were true, how can he argue that Vertuccio's crime was rooted somehow in legal advice that he had received from Servider? Indeed, at Servider's trial with their current postures at opposite poles, and at sentencing, whether of Vertuccio alone or of both defendants, because of the uneven keel in their relationship, the tension between, and likely clash in, the interests of the jointly represented codefendants, is real and palpable. Though not actual yet, a conflict in the ethical obligations Attorney Froccaro owes each defendant separately seems simply unavoidable. *See Levy*, 25 F.3d at 156.

In its bench ruling granting the government's motion to disqualify Attorney Froccaro as Servider's trial counsel, the Court underscored its recognition that the Sixth Amendment's

guarantee of the right to effective counsel meant that most conflicts presented in dual representation cases could be waived where the waiver is well-informed, knowing, and voluntary. *Perez*, 325 F.3d at 127. The Court does no less now.

In light of the Court's recognition of that right, Servider, as could be expected, returns to that basic constitutional understanding and has cited two cases where such waivers have been sustained. *See, e.g., United States v. Pizzonia*, 415 F. Supp. 2d 168 (E.D.N.Y. 2006). What case law makes clear, however, is that there is a boundary between *Curcio* waivers that are acceptable and those that are not. At the same time, it is a boundary that is not demarcated by barbed wire. There is no bright line separating circumstances that are waivable from those that are not. Here, though, regardless of where that boundary line may precisely be, it is clear that Servider's choice of Attorney Froccaro is over on the disqualification side of it.

No one can forecast with precision now how the interests of Servider, Vertuccio, and the ethical obligations owed to them individually by Attorney Froccaro will collide. What is known now is that, if not disqualified, Attorney Froccaro will be in the unique posture of representing in the same case two codefendants, one of whom he has pleaded guilty of the conspiracy of which the other proclaims his innocence and who, at trial, will be confronted with witnesses who will detail how Servider conspired with Attorney Froccaro's other client. The impropriety of Attorney Froccaro's joint representation would be best crystallized should Servider be convicted. Then, Attorney Froccaro would be required to stand before the same sentencing judge and put the best face on the facts for each defendant – the impossible task of presenting facts and argument showing that each was less culpable than the other.

## Conclusion

Put succinctly, a trial court has its own independent interest in ensuring that the criminal

trial proceeds fairly and justly, both as a matter of internal procedure and the public's interest in the integrity of the judicial process itself. That obligation works hand in glove with its duty to ensure that counsel acts ethically. For all of those reasons, the Court disqualified Attorney Froccaro as Servider's attorney and, at the time of its bench ruling, directed Servider to choose other qualified counsel.

Dated: Brooklyn, New York
      December 6, 2017

/S/ USDJ ERIC N. VITALIANO
-------
ERIC N. VITALIANO
United States District Judge